STATE OF TEXAS et al. v. MOODY'S ESTATE et al.
No. 11501.

Circuit Court of Appeals, Fifth Circuit.
July 16, 1946.

L. P. Lollar and W. T. Curry, Assts. to Atty. Gen. of Texas, and Charles H. Theobald, of Galveston, Tex., for appellants.

H. E. Kleinecke, Jr., and Jas. W. Wayman, both of Galveston, Tex., for appellees.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

PER CURIAM.

The question involved here is whether Art. 7151, Revised Civil Statutes of Texas, 1925, as amended on April 7, 1943, by S. B. 126, Vernon's Ann.Civ.St. art. 7151, exempts from the 1944 taxes lands which on January 1, 1944, were merely under lease by the owner to the United States, the fee of which was not acquired by the Government until February 8, 1944.

In the first section of the statute there appears the following language:

"* * * if the United States Government or any of its agencies having the power of condemnation shall take over the possession of property under authority of any law authorizing it to condemn said property, or under an option to buy said property from the owner, or under an agreement by the owner to sell said property, or shall comply with the laws relating to condemnation to such an extent as to entitle it to the possession of said property, or to constitute a taking thereof from the owner or person in whose name title rests, then such condemning authority shall be considered the owner of said property for all the purposes of state and county taxation from the date of taking possession

thereof, or from the date of its complying with the condemnation laws to the extent that it is entitled to possession of said property, or from the date it has complied with the condemnation laws to the extent that there has been a taking of said property from the owner, whichever occurs first."

The foregoing portion of the statute seems to support the construction given by the lower Court that since the Government had·taken possession of the property before January 1, the lands were exempt from the 1944 state and county taxes. However, section 2 of the statute reads in part as follows:

"The fact that the United States Government has acquired and is acquiring and will continue to acquire considerable property in this state and in the several counties of this state by purchase or condemnation, to be used by the United States government or its agencies, for general governmental purposes and in pursuance of the war effort now being conducted against Germany, Japan, and Italy, and the fact that ad valorem taxes for the years 1941 and subsequent years in which said property has been acquired, is being acquired, or will be acquired, are not included in the consideration of passage of title to such property in most instances, and further, that said property is acquired through no fault of the landowner, and results in complete and total loss to the landowner of the enjoyment of his property, creates and constitutes a public calamity * * *."

It will be noted that Sec. 2 states in substance that the United States is acquiring and will continue to *acquire* considerable property by *purchase* or *condemnation* and that ad valorem taxes for the years 1941 and subsequent years are not included in the consideration of passage of *title* to such property in most instances and that said property is acquired through no fault of the landowner and results in *complete and total loss to the landowner of the enjoyment of his property*. (Italics added.)

We agree with the appellants:

■ (1) That the lien for State and County taxes on real estate became a lien on the land as of January 1, 1944.

■ (2) That ordinarily any valid lien on lands which existed at the time such lands were acquired by the United States should be satisfied out of the compensation paid to the owner for the taking of such lands.[1]

Such course could be followed in this case unless the statute has exempted the 1944 taxes on land which the Government had possession of only under a lease prior to its acquisition of the fee in February, 1944.

■■ The statute must be construed as a whole rather than for selected phrases in Sec. 1. The intent of a statute is its essence. Sec. 2 makes it clear that the 1943 amendment was designed to protect from taxes the landowner who has suffered the "complete and total loss * * * of the enjoyment of his property." One does not undergo a complete and total loss of his property whose land is merely leased to the Government for a consideration that (so far as this record shows) was satisfactory. As to him it will not be presumed that the ad valorem taxes are not included in the consideration. Moreover, in a mere lease there is no "passage of title" such as the Act speaks of.

■ The reason for the passage of the statute was to protect the owner against having to pay taxes on property over which he has lost possession in a proceeding which ultimately will result in the loss of title to such property.

■ We are not to construe the statute liberally. We are admonished by all the Texas decisions that tax exemption provisions are subject to strict construction.[2] Under settled Texas decision, exemptions from taxation are never favored and in the construction of the law extending exemptions from taxation all doubts must be resolved in favor of the taxing power and against the exemption.[3] So construed, the statute cannot be held to support the claim to exemption.

The judgment is reversed.

[1] United States v. 111,000 Acres of Land, 5 Cir., 155 F.2d 683.

[2] Little Theater of Dallas v. City of Dallas, Tex.Civ.App., 124 S.W.2d 863.

[3] City of Longview v. Markham McRee Memorial Hospital, 137 Tex. 178, 152 S.W.2d 1112; City of Dallas v. Cochran, Tex.Civ.App., 166 S.W. 32, 34.