601 So.2d 474 (1992)
Charles H. CRIM, as Tax Assessor of Jefferson County, and O.Z. Hall, as Tax Collector of Jefferson County
v.
Ann PHIPPS, as Executrix of the Estate of Roy E. Phipps, Deceased.
1901475.
Supreme Court of Alabama.
June 19, 1992.
*475 Jeffrey M. Sewell and Charles S. Wagner, Asst. County Attys., Birmingham, for appellant.
Mark W. Bond and Bradford W. Botes of Bond & Botes, P.C., Birmingham, for appellee.
Robert E. Paden of Paden & Paden, Bessemer, for amicus curiae the City of Bessemer, Ala.
PER CURIAM.
Jefferson County's tax assessor and tax collector appeal from a summary judgment declaring certain real property, leased to and used by the Alabama Department of Human Resources ("DHR"), exempt from ad valorem taxes. The summary judgment also ordered the Jefferson County tax collector to refund the ad valorem taxes that had been paid on the real property during the previous two years and prohibited future ad valorem tax assessment and collection on the property while it is used for charitable purposes. According to the trial court's judgment, the real property is exempt from ad valorem taxes because it is used exclusively for charitable purposes. On this appeal, the only question is whether DHR's use of the property qualifies for the tax exemptions found in Ala. Const. Art. IV, § 91; Ala. Const. Amend. No. 373(k); and Ala.Code 1975, § 40-9-1(1).
The only facts established in the record are that DHR had leased an office building and an adjoining parking area from Roy Phipps,[1] and that DHR uses this property for processing applications for, and distributing, welfare benefits. No evidence was presented regarding the amount of the rent or the rental value of the property.
Article IV, § 91, of the Alabama Constitution states: "The legislature shall not tax... lots in incorporated cities and towns... with the buildings thereon, when same are used exclusively for religious worship, for schools, or for purposes purely charitable." Id. (emphasis added). Amendment No. 373(k) states: "The following property shall be exempt from all ad valorem taxation: the real and personal property of the state, counties and municipalities and property devoted exclusively to religious, education or charitable purposes." Id. (emphasis added). This exemption from ad valorem taxes is repeated in Ala.Code 1975, § 40-9-1(1).
Phipps relies on State v. Kinder-Care Learning Centers, Inc., 418 So.2d 859 (Ala. 1982); State v. Bridges, 246 Ala. 486, 21 So.2d 316 (1945); State v. Alabama Educational Foundation, 231 Ala. 11, 163 So. 527 (1935); State v. Church of the Advent, 208 Ala. 632, 95 So. 3 (1923); and Anniston City Land Co. v. State, 160 Ala. 253, 48 So. 659 (1909), for the argument that the use of the property rather than its ownership determines whether it is exempt from ad valorem taxation. We find all of these cases except Anniston City Land Co. distinguishable.
In Kinder-Care, supra, the Court held that Kinder-Care's use of its property for day care centers was not exclusively an educational use so as to qualify for tax exemption. Kinder-Care apparently owned the property, and the opinion makes no distinction between the use and the ownership of the property. Bridges involved a building of which the ground floor was used for commercial purposes and the second and third floors were leased to a business college. The owner applied for an "educational use" exemption, but the Court held that the building could not be divided into taxable and tax-exempt portions, at least where one owner owned the entire building. Alabama Education Foundation involved a statute by which the legislature had given a broader educational exemption than that provided by the Constitution, but this Court found no violation of the Constitution thereby. Church of the *476 Advent involved property owned by a church and leased to an individual who used the property as a boarding house. The Court held that the property was not used for religious purposes and that it was immaterial how the church used the rent derived from the lease.
The above four cases cite Anniston City Land Co. for the proposition that use, not ownership, determines tax exemption. However, they all are decided on other grounds. Anniston City Land Co. is on point to the question at issue, however. The Anniston City Land Company owned two parcels of property that it leased to others for use as schools. The Court reversed a judgment that the property was taxable, holding:
"[I]t is manifest that section 91 of the Constitution makes use of the property, irrespective of ownership, the test of the right of exemption from taxation, and that, under the Constitution, in order to be exempt, it is only necessary that the property ... shall be used directly and exclusively for schools."
160 Ala. at 259-60, 48 So. at 661.[2]
Tax exemptions are to be strictly construed against the exemption and in favor of the tax. Kinder-Care, supra, 418 So.2d at 861. The tax exemption is not available "unless the intention to exempt such person or property clearly appears in some statute or constitutional provision." Id., quoting Anniston City Land Co., supra, 160 Ala. at 256, 48 So. at 660.
Courts in other jurisdictions have held that a lease for profit by the owner to a charitable entity is not a "charitable use" of the property. In a case decided shortly before Anniston Land Co., the Supreme Court of Missouri interpreted a constitutional tax exemption for property "used exclusively for religious worship, for schools, or for purposes purely charitable," i.e., a provision virtually identical to § 91 of our constitution. The owner leased the property to the public schools, just as the Anniston City Land Company did with one of its parcels. The Supreme Court of Missouri came to the conclusion opposite that reached by this Court in Anniston City Land Co., however:
"The ownership or title to the property is not the determining factor. For if the property is owned by a religious, charitable or school organization, and is leased or rented for use for any purpose than such as the Constitution contemplates, the land is not exempt. So, if the private owner of the land allows his land to be used for such purposes, and charges no rent and derives no personal benefit from the land, the land is exempt from taxation, because the land is then devoted exclusively to such a use.... For in such case the owner contributes the use of his land to a public or quasi-public use, or to such a use as the Constitution contemplates, and derives no gain or profit for himself, and, therefore, the State does not exact a tax from his land with one hand while accepting a contribution of the use of his land with the other hand.
"But on the contrary, when the owner leases his land to the public for a public use, or to a quasi-public body for a charitable or religious use, and applies the rents derived from the land to his own personal advantage, he contributes nothing to the public or to charity, he loses nothing by the use, he is not a benefactor to any one, but he stands before the law in exactly the same light as any one else who leases his land for any other purpose, and uses the rents for his own advantage, and, therefore, he is not entitled to any special consideration at the hands of the law or the government, and his property is not exempt.
"There would be just exactly as much, and no more or less reason, for holding that the property of one who sold provisions or supplies to a charitable institution which were used to support the lives of the inmates thereof, was exempt from taxation. In both cases he would get and appropriate to his own use the proceeds or products of his property, just *477 the same as if it had been rented or sold to a private citizen or to a business concern, and in neither instance would the State or the charitable institution be benefited one jot or tittle by the transaction, for it would pay a full consideration for all it got."
State ex rel. Hammer v. MacGurn, 187 Mo. 238, 242-43, 86 S.W. 138, 139 (1905).
MacGurn was quoted with approval by the Supreme Court of Iowa in Warden Plaza v. Board of Review of the City of Fort Dodge, 379 N.W.2d 362 (Iowa 1985). The Iowa court similarly held that "if [the owner's] ownership and use of the property through its lease to [a senior citizens' home] was to derive profit or to use the rents to its own advantage, then the Board properly denied the property tax exemption." 379 N.W.2d at 366. In that case, the lease specifically provided that if the tax exemption was not allowed, the rent would be increased by the amount of the tax. The court cited two cases that had allowed tax exemption under such facts, but distinguished those cases by saying: "On the other hand, many states reach the contrary conclusion and we believe the reasoning in those decisions is more persuasive." Id. The court then cited MacGurn; Sisters of Providence v. Municipality of Anchorage, 672 P.2d 446 (Alaska 1983); Appeal of Wirt, 225 Kan. 517, 592 P.2d 875 (1979); Northwest Community Hospital v. Board of Review, 229 N.W.2d 738 (Iowa 1975); and Commissioners of Cambria Park v. Board of County Comm'rs, 62 Wyo. 446, 174 P.2d 402 (1946).
Our research has also disclosed Kunes v. Samaritan Health Service, 121 Ariz. 413, 590 P.2d 1359 (Ariz.1979); Columbia County Mental Retardation Realty Co. v. Palen, 97 Misc.2d 9, 410 N.Y.S.2d 789 (N.Y.Sup.1978); Christ the Good Shepherd Lutheran Church of San Jose v. Mathiesen, 81 Cal.App.3d 355, 146 Cal.Rptr. 321 (1978); and Milward v. Paschen, 16 Ill.2d 302, 157 N.E.2d 1 (1959), among the cases consistent with the holding that a lease for profit is not a charitable use. See Annot., "Property Tax: Exemption of Property Leased by and Used for Purposes of Otherwise Tax-exempt Body," 55 A.L.R. 430 (1974).
Having considered these authorities, we conclude that the better rule is that a lease for profit to a religious, educational, or charitable entity is not a use of the property exclusively for one of those purposes. The best argument for the contrary rule is that if the property is exempt the owner can reduce the rent by the amount of the taxes and still make the same profit as he would by renting the property at fair market rent to a nonexempt entity. While this is a somewhat appealing policy argument, it is refuted by the fact that the owner is still using the property for private advantage, and the Constitution and statute grant the exemption only if the property is used "exclusively" for the stated purposes. Furthermore, there was no attempt to show in this case that the rent charged to the Department of Human Resources was any less than the fair market rental value of the property.
For the foregoing reasons, we overrule Anniston City Land Co. v. State, 160 Ala. 253, 48 So. 659 (1909), insofar as it holds that a lease for profit to an entity using the land for religious, educational, or charitable purposes entitles the property owner to an ad valorem tax exemption. We reverse the judgment and remand the cause for further proceedings.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
INGRAM, J., concurs specially.
INGRAM, Justice (concurring specially).
I agree with the majority opinion. I am satisfied that it properly addresses the real issue presented by this case.
I concur specially because I feel compelled to state that I am amazed, after reading the Anniston City Land Co. case, cited in the majority opinion, that this Court in 1909 could have reasoned that Art. IV, § 91, of our State Constitution stood for the proposition that the "use of the property, irrespective of ownership "was *478 the test of exemption from ad valorem taxes. (Emphasis added.)
Even a casual reading of § 91 should easily lead one to believe that that section contemplated the use of real property joined with ownership of that property. This is simply to say that if the religious, educational, or charitable entity owns the real property and uses it for purposes allowed by § 91, the exemption is allowed. If, however, that same entity owns the property and the property is used for purposes outside the exemption, the exemption is not allowed. And, finally, if the property is owned by one other than a religious, educational, or charitable entity, and the owner leases or rents it to someone who uses that property for religious, educational, or charitable purposes, and the owner derives any income from that lease or rental, then the exemption is not allowed.
NOTES
[1] Roy Phipps died before a final judgment was entered in this case, and Ann Phipps, executrix of his estate, was substituted as the plaintiff.
[2] In a subsequent appeal, the Court held one of the properties taxable because it was not used exclusively for a school. 185 Ala. 482, 64 So. 110 (1913).