(66 P.3d 247)

No. 88,681

IN THE MATTER OF THE APPEAL OF POLAROID ID SYSTEMS, INC., AND REQUEST FOR ABATEMENT IN ALL KANSAS COUNTIES FROM AN ORDER OF THE BOARD OF TAX APPEALS.

Opinion filed April 11, 2003.

*S. Lucky Defries* and *Jeffrey A. Wietharn*, of Coffman, DeFries & Nothern, A Professional Association, of Topeka, and *Benjamin Byrd*, of Polaroid Corporation, of Cambridge, Massachusetts, for the appellant.

*Joe Shepack*, county attorney, of Ellsworth, *Michael A. Montoya*, of Michael A. Montoya, P.A., of Salina, and *Keyta D. Kelly*, county counselor, of Leavenworth, for the appellees.

Before RULON, C.J., PIERRON and MARQUARDT, JJ.

PIERRON, J.: Polaroid ID Systems, Inc., (Polaroid) appeals the decision of the Kansas Board of Tax Appeals (BOTA) that equipment provided by Polariod to state and/or county governments for making driver's licenses and state identification cards was not exempt from ad valorem taxation. We affirm.

The facts are stipulated by the parties. In 1993, NBS Imaging Systems (NBS) and the Kansas Department of Revenue entered into an agreement entitled "Digitized Drivers' License System Contract." NBS provided computer workstations and capture stations to Kansas counties to produce Kansas state driver's licenses and state identification cards. Taxes on the business machinery and equipment were paid on this property through 1999. Polariod acquired NBS in 1997 and assumed the position of NBS in this contract. The contract was renewed in 1997, extending the agreement through June 30, 2003.

The equipment, including capture station, die cutter, and encoder, is operated solely by state and city employees and used only to produce Kansas state driver's licenses and state identification cards. Out of 105 Kansas counties, 104 use the equipment. Polariod

is compensated under the contract on a fee-per-picture basis. Polariod retains title and is the owner of the equipment both during and at the expiration of the contract. Neither the State nor the participating counties has any ownership of the property, and there is no option at the end of the contract to purchase the property.

Polariod appealed to BOTA from the assessment and levy of taxes for the various counties for the year 2000 and forward and sought a refund of taxes paid for years 1997, 1998, and 1999.

The Board found the subject property was not used exclusively for a governmental or proprietary function and, therefore, was not entitled to tax exemption. The Board stated:

"The Board finds that the applicant's use of the property is not an exclusive use, but a simultaneous use. There is a simultaneous use in that the State of Kansas gains an advantage by using the equipment and Polariod gains an advantage by collecting the profits from the licenses and identification cards produced. Farmer's Co-op v. Kansas Bd. of Tax Appeals, 236 Kan. 632, 638, 694 P.2d 462 (1985). The legislature never intended for exemption statutes to be used so that a non-tax exempt entity, because it rents to a tax exempt entity for a substantial rental, to escape property taxes. In re Board of Johnson County Comm'rs, 225 Kan. 517, 521, 522, 592 P.2d 875 (1979) (citations omitted). As such, there is no need to further analyze additional requirements or restrictions found in K.S.A. 79-201a Second, and amendments thereto."

In an appeal from an order of BOTA, the Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601, et seq., controls an appellate court's scope of review. See K.S.A. 74-2426(c) (noting that BOTA's decisions are subject to review in accordance with the KJRA).

Within the KJRA, K.S.A. 77-621(a)(1) provides that unless "this act or another statute provides otherwise . . . [t]he burden of proving the invalidity of agency action is on the party asserting invalidity." K.S.A. 77-621(c)(4) specifies that this court may grant relief from an order of BOTA if we determine that the agency has erroneously interpreted or applied the law.

BOTA is considered the paramount, lawfully constituted taxing authority in Kansas. Wirt v. Esrey, 233 Kan. 300, 314, 662 P.2d 1238 (1983). "The party challenging the validity of BOTA's order bears the burden of proving the order's invalidity. K.S.A. 77-

621(a)(1)." *In re Tax Appeal of the Boeing Co.*, 261 Kan. 508, Syl. ¶ 4, 930 P.2d 1366 (1997).

BOTA's decision involved the legal interpretation of Article 11, Section 1(b) of the Kansas Constitution and K.S.A. 2002 Supp. 79-201a *Second*. Article 11, Section 1(b) provides the following exemptions:

"(2) All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, farm machinery and equipment, merchants' and manufacturers' inventories, other than public utility inventories included in subclass (3) of class 2, livestock, and all household goods and personal effects not used for the production of income, shall be exempted from property taxation."

K.S.A. 2002 Supp. 79-201a *Second* provides an exemption from all property and ad valorem taxes for

"[a]ll property used exclusively by the state or any municipality or political subdivision of the state. All property owned, being acquired pursuant to a lease-purchase agreement or operated by the state or any municipality or political subdivision of the state, including property which is vacant or lying dormant, which is used or is to be used for any governmental or proprietary function and for which bonds may be issued or taxes levied to finance the same, shall be considered to be used exclusively by the state, municipality or political subdivision for the purposes of this section . . . . *All property leased, other than property being acquired pursuant to a lease-purchase agreement, to the state or any municipality or political subdivision of the state by any private entity shall not be considered to be used exclusively by the state or any municipality or political subdivision of the state for the purposes of this section* except that the provisions of this sentence shall not apply to any such property subject to lease on the effective date of this act until the term of such lease expires but property taxes levied upon any such property prior to tax year 1989, shall not be abated or refunded." (Emphasis added.)

Polaroid's arguments that the agreement at issue is not a lease are unpersuasive. Polaroid argues the agreement was not a lease because it was entitled "Drivers License System Contract." Polaroid also states it was compensated under the contract not based on the property itself, but on each license or card processed. On the other hand, the counties cite Black's Law Dictionary, 889 (6th ed. 1990) where "lease" is defined as an "[a]greement under which owner gives up possession and use of his property for valuable

consideration and for definite term and at end of term owner has absolute right to retake, control and use property."

The driver's license system contract in this case clearly falls within the definition of a lease. Polaroid gave up possession and use of its equipment. In exchange, it received valuable consideration in a fee-per-use payment system. Neither the State nor the counties had ownership interest in the property, and Polaroid had an absolute right to retake, control, and use the property at the end of the contract period. It is undisputed that there is no option to purchase. BOTA did not err in finding the agreement constituted a lease.

As leased property to the State, the statutory language of K.S.A. 2002 Supp. 79-201a *Second* prohibits Polaroid from exempting the equipment. "When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *State ex rel. Stovall v. Meneley,* 271 Kan. 355, 378, 22 P.3d 124 (2001). The intent of K.S.A. 2002 Supp. 79-201a *Second* is clear. Property leased, but not leased-to-own, to the state "shall not be considered to be used exclusively by the state." This language in K.S.A. 2002 Supp. 79-201a *Second* appears to be a codification of the "simultaneous use" rule established by the courts and supports BOTA's conclusion that "[t]he legislature never intended for exemption statutes to be used so that a non-tax exempt entity, because it rents to a tax exempt entity for a substantial rental, to escape property taxes."

The most helpful case for resolving the conflict at issue is *In re Board of Johnson County Comm'rs,* 225 Kan. 517, 592 P.2d 875 (1979) wherein the court held that property owned by a nontaxexempt entity and leased for profit to a tax-exempt entity pursuant to K.S.A. 79-201b *First* (Weeks 1977) was not being used exclusively for the statutory purpose and did not qualify for tax exemption. The statute provided:

"The following described property, to the extent herein specified, shall be and is hereby exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

"*First:* All real property, and tangible personal property, actually and regularly used exclusively for hospital purposes by a hospital as the same is defined by K.S.A.1977 Supp. 65-425, and amendments thereto, or a psychiatric hospital as the same is defined by K.S.A.1977 Supp. 59-2902, and amendments thereto, which hospital or psychiatric hospital is operated by a corporation organized not for profit. . . ." (Emphasis added.)

As in the present case, the parties desiring the exemption in *In re Board of Johnson County Comm'rs* contended that "used exclusively" meant only the physical use of the property and that the intangible benefits of ownership, including rental of the property for profit, did not constitute using the property. Further, because the exemption benefits would flow through to the nonprofit corporation which was responsible for the taxes under the parties' lease agreement, it was argued that granting the exemption would be consistent with the intent of the Kansas Constitution and statutes.

The court in *In re Board of Johnson County Comm'rs* relied upon the well-established definition of the term "used exclusively" as quoted in *Seventh Day Adventist v. Board of County Commissioners*, 211 Kan. 683, Syl. ¶ 2, 508 P.2d 911 (1973): "The phrase 'used exclusively' in the constitution and statute means that the use made of the property sought to be exempted from taxation, must be only, solely and purely for the purposes stated, and without participation in any other use." Applying that definition, the court held:

"To say that an investor who owns valuable property, real or personal, and leases it for profit is not using his property ignores the obvious fact that the owner-lessor is exercising his right to use the property just as surely as if he were utilizing it in a physical sense for his own objectives. . . . The renting by the lessor and the physical use by the lessee constitute simultaneous uses of the property and when an owner leases his property to another, the lessee cannot be said to be the only one using the property. The owner is using it as he sees fit to reap a profit from his investment just as surely as if he physically operated the property.

"We hold that property owned by a non-tax-exempt entity and leased for profit to a qualifying tax-exempt entity, is not being used exclusively for tax-exempt purposes and is subject to ad valorem and property taxes." 225 Kan. at 522-23.

The holding in *In re Board of Johnson County Comm'rs* was applied to deny exemptions in two other cases of note. In *Board*

*of Wyandotte County Comm'rs v. Kansas Ave. Properties*, 246 Kan. 161, 176-77, 786 P.2d 1141 (1990), the court held that Article 11, § 13 of the Kansas Constitution, which provides an ad valorem tax exemption to property used for economic development purposes, did not apply to property rented or leased for profit even though the property was being used by the renter or lessee solely for one or more of the economic development purposes contained in the amendment.

As relied upon by BOTA in the present case, *Farmers Co-op v. Kansas Bd. of Tax Appeals*, 236 Kan. 632, 694 P.2d 462 (1985), applied exemptions within the farming provisions of K.S.A. 1983 Supp. 79-201i and K.S.A. 79-201j. The court held that farm machinery and equipment owned by taxpayers who provided custom combining services to farmers and fertilizer equipment owned by a farm cooperative which was rented to farmers was subject to ad valorem and property taxation. It is noteworthy that the legislature cured any perceived injustice in the *Farmers Co-op* case by amending K.S.A. 79-201j to exempt property used for "performing of farm or ranch work for hire." See *In re Tax Appeal of Lietz Construction Co.*, 273 Kan. 890, 47 P.3d 1275 (2002).

Polariod considers the simultaneous use concept established in *In re Board of Johnson County Comm'rs* to be "highly theoretical and not intuitive." Polaroid cites several cases in support of this position. *Topeka Cemetery Ass'n v. Schnellbacher*, 218 Kan. 39, 42, 542 P.2d 278 (1975); *League of Kansas Municipalities v. Board of Shawnee County Comm'rs*, 24 Kan. App. 2d 294, 302, 944 P.2d 172 (1997); *Salina Airport Authority v. Board of Tax Appeals*, 13 Kan. App. 2d 80, 761 P.2d 1261, *rev. denied* 244 Kan. 738 (1988). However, none of these cases concern the factual situation in the present case of a nonexempt entity claiming an exemption for property leased to an exempt entity.

In *Salina Airport Authority*, the Authority rented hangars to nonaviation businesses to generate revenue and then requested an exemption for the real estate where the hangars were located. The court held the mere fact that the Authority received rental income did not constitute "use" within the meaning of K.S.A. 1987 Supp.

79-201a *Second* and the Authority was not entitled to an exemption. 13 Kan. App. 2d at 85.

In *League of Kansas Municipalities*, the court stated the constitutional exemption from taxation depended solely upon the exclusive use made of the property and not on the ownership or the character of the owner. The court found that property owned by an instrumentality of a government entity (the League of Kansas Municipalities) was exempted as long as such property was actually being used exclusively for governmental purposes. 24 Kan. App. 2d 294, Syl. ¶¶ 7, 8.

In *Topeka Cemetery Ass'n*, the court held unconstitutional as violating the principles of uniform taxation a statute that exempted tracts or lots located within cemetery property only if the tract or lot was purchased by individual owners for present or future use as a grave site. 218 Kan. 39, Syl. ¶ 5. The statute did not exempt the cemetery property owned by the cemetery corporation that had yet to be sold for grave sites.

In construing an exemption to taxation, well-recognized rules of construction apply.

" 'Taxation is the rule, and exemption from taxation the exception under the Kansas Constitution and statutes. [Citation omitted.] Constitutional and statutory provisions exempting property from taxation are to be strictly construed against the one claiming exemption. [Citation omitted.] Where the language of a statute, in particular, is relied upon as creating an exemption from taxation, it must be strictly construed against the party claiming the exemption. . . . [Citation omitted.] Strict construction, however, does not warrant unreasonable construction. [Citation omitted.]' " *Board of Sedgwick County Comm'rs v. Action Rent to Own, Inc.*, 266 Kan. 293, 301, 969 P.2d 844 (1998) (citing *In re Tax Exemption Application of City of Wichita*, 255 Kan. 838, 842, 877 P.2d 437 [1994]).

Pursuant to K.S.A. 2002 Supp. 79-201a, Polaroid is not entitled to exempt the property in question since by definition it is not "used exclusively" by the state for any government or proprietary function. Within the simultaneous use rule, Polaroid is not entitled to exempt the property since there is a simultaneous use in that the State gains an advantage by using the equipment and Polaroid gains an advantage by collecting the profits from the licenses and

identification cards produced. See *In re Board of Johnson County Comm'rs*, 225 Kan. at 522-23.

Polaroid argues that even if the property is not owned or being acquired by a lease-purchase agreement, it is still entitled to exemption because K.S.A. 2002 Supp. 79-201a *Second* also applies to property that is *"operated* by the state" and is used for government function and bonds may be issued to finance same. Polaroid's argument fails to acknowledge that the legislature specifically stated that property leased to the state is not exempt property. When there is a conflict between general and specific statutes, "the more specific statute prevails unless it appears that the legislature intended to make the general statute controlling." *In re J.A.*, 30 Kan. App. 2d 416, Syl. ¶ 2, 42 P.3d 215 (2002).

Polaroid raises the applicability of the "or operated" language within the context that the legislature is presumed to not enact legislation that has no effect. Polaroid states it is hard pressed to imagine a situation where the "or operated" language applies if it is not applicable in the present case. While it is not our duty to conjure up hypothetical applications for the "or operated" language in K.S.A. 2002 Supp. 79-201a *Second,* we again find the legislature has specifically stated that property leased to the state is not entitled to exemption.

Alternatively, Polaroid argues that even if the restrictive language of K.S.A. 2002 Supp. 79-201a *Second* applies, it only applies to the statute and not to the constitutional right to exemption in Article 11, Section 1(b) of the Kansas Constitution. In K.S.A. 2002 Supp. 79-201a *Second,* the legislature defined "used exclusively" to not include property leased to the state. This definition of "used exclusively" would apply equally to the facts of this case applied under the Kansas Constitution exemption provisions. See *Seventh Day Adventist*, 211 Kan. 683, Syl. ¶ 2 ("used exclusively" applies the same in the constitution and the statutes). The constitutionality of K.S.A. 2002 Supp. 79-201a *Second* has not been challenged.

The appellee for several counties also challenges Polaroid's standing to seek a refund of taxes paid in 1997, 1998, and 1999. The issue of standing was not raised before BOTA and was not part of BOTA's decision. Issues raised for the first time on appeal

are not properly before the appellate courts. See *Dalmasso v. Dalmasso*, 269 Kan. 752, 765, 9 P.3d 551 (2000).

Affirmed.